UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREGORY RICHARDS,

       Plaintiff,

       v.

RODERICK J. MCDAVIS, et al.,

       Defendants.

Case No. 2:12-cv-846
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Dismissal and Summary

Judgment. (ECF No. 20.)  For the reasons that follow, the Court **GRANTS** Defendants' motion.

### I.

Plaintiff, Gregory Richards, was an undergraduate student at Ohio University and planned

to graduate at the end of Spring Semester 2012 from the University's Business College with

majors in accounting, finance, and business pre-law.  On February 27, 2012, Plaintiff was on his

way to a local drinking establishment to meet friends.  On his way to the bar, Plaintiff walked by

another drinking establishment and a Caucasian male, who was standing with a group of his

friends, called Plaintiff a nigger.  Plaintiff approached the speaker, who blew cigarette smoke in

Plaintiff's face.  Plaintiff smacked the cigarette out of the man's hand and a young woman

jumped in between the two men and asked Plaintiff to leave.  Plaintiff walked away and the

group of men snickered and laughed at him.

When Plaintiff arrived at his destination he informed his friends of the events that had

just occurred, they accompanied him back to the location of the group of men, and Plaintiff

"confront[ed] the guy" who had used the offensive racial slur toward Plaintiff. (Pl.'s Testimony,

TRO Hearing Transcript ("Tr.") at 157.)  Plaintiff said to him "you're not so tough when you're

outnumbered." *Id.*  The man "got up from the chair and nudged" Plaintiff who "pushed him" and

"said, do not touch me." *Id.*  An altercation ensued and at some point the Caucasian man "fled

the bar en route to the BP gas station." *Id.* at 158.  Plaintiff followed him, believed he was still

smirking, and "in a rage, [Plaintiff] threw the bottle of ale in his direction." *Id.*  The cashier told

Plaintiff to leave, which he did.  Plaintiff went back to the bar where he had met his friends.

Shortly thereafter the police arrived and arrested Plaintiff.

Plaintiff was charged in the Athens County Municipal Court with three counts of assault,

one count of criminal damaging/endangering, and disorderly conduct.  The Police Report

provides in relevant part:

> Upon arrival to Dales BP, the employee working stated that Richards was the
> male that threw two full bottles of Ale 8 Soda at them and was knocking down items
> in the store. . . .
>
> I went to the J Bar and spoke to several individuals in the bar.  The bar staff
> advised that the African American Male came into the bar and was very upset.  He
> advised the male began pushing over chairs and then threw a bar stool at a male,
> [name redacted].  They advised the male then threw a drinking glass at someone.  A
> female in the bar, [name redacted], was in the middle of the incident and was struck
> in the face by the male.
>
> [A witness] advised the male came in and started yelling.  [The witness]
> advised he went to make sure his sister, [name redacted] did not get hurt and the male
> attacked him.  [The witness] advised the male threw the glass and then threw the bar
> stool at him.  [The witness] advised he caught the bar stool and the male left the bar.
> [The witness] had red marks on his left arm and a cut on his left hand from the stool.
>
> [Another witness] advised she was smoking outside the bar and the male
> started an argument.  [The witness] advised she got in the middle and broke the

2

argument up and the male left. [The witness] advised she went back into the bar and the male returned with his friends. [The witness] advised an altercation started in the bar and she was hit in the face by the male. [The witness] did not have any physical marks on her face.

(TRO Hearing Defense Exhibit "Def. Ex." 8 at 10.)

Ohio University, through a program funded by student tuition, appointed counsel to assist Plaintiff in the criminal case.

Thereafter, Plaintiff was informed via letter and email that he had been charged with an alleged violation of the Ohio University Student Code of Conduct based on the events that took place on February 27, 2012. Specifically, Plaintiff was informed that he was charged with the following violations of the Code: "A4 Mental or Bodily Harm to Others; A9 Destruction of Property; A18 Violation of Disciplinary Probation; B2 Disturbing the Peace." (Def. Ex. 8 at 20.)

On March 15, 2012, Plaintiff appeared at the initial interview, which was conducted by the Assistant Director of the Office of Community Standards & Student Responsibility, Defendant Jessica White. Plaintiff testified that at this meeting he asked Ms. White if he could have an attorney at the next hearing and she said that he could not. Ms. White testified that Plaintiff did not ask her if he were permitted to have an attorney.

On April 9, 2012, Ms. White sent a letter and a copy of the letter via email to Plaintiff. The letter provides in relevant part:

> During a procedural interview on March 15, 2012, I advised you of the charges you face, as well as your rights and options as provided by the Code of Conduct, in the event the charges are to be substantiated. You acknowledged that you understood this information and explained your side of the case. Because your side of the case differed substantially from that of the complainant, you asked me to decide your case via a University Hearing Board.
>
> Accordingly, I have scheduled a University Hearing Board for Monday, April

3

> 23, 2012 . . . . At this hearing, you may present your side of the incident in question,
> ask questions of people who testify at the hearing, and may examine any evidence
> presented at the hearing. If based on the weight and credibility of the statements and
> evidence presented at the hearing you are found responsible for one or more of the
> charges you face, you will be given an opportunity to present character witnesses
> and/or written references for my consideration in determining a disciplinary sanction.
> This phase of the hearing, if warranted, will occur immediately following my finding
> on the charges on April 23. If insufficient evidence is presented to substantiate the
> charges you face, the charges will be dismissed.

(Def. Ex. 8 at 49, 51.)

On the same day the above email was sent, April 9, 2012, Ms. White also sent another

email to Plaintiff that indicated, *inter alia*, the following:

> You have the right to have an advisor to help you through our process. Our Assistant
> Director Ardy Gonyer is willing to help you and act as your advisor. I have CCed
> him in this email; please contact him if you would like to work with him. You can
> also contact me if you have any questions or concerns.

(Def. Ex. 8 at 50.) Plaintiff contacted Mr. Gonyer for assistance.

Plaintiff appeared at the April 23, 2012 University Hearing Board without an advisor,

presented his side of the case,  and presented witness statements testifying to his

accomplishments at school, his community service work, and his good character. (Def. Ex. 8 at

64–76.) Other evidence was also presented, including witness statements against Plaintiff, and

his disciplinary record. Plaintiff's disciplinary record consisted at that time of twelve previous

Student Code of Conduct violations, including academic misconduct for plagiarism, mental or

bodily harm to others, theft or possession of stolen property or service, and three violations of

Code infractions while on disciplinary probation.

The University Hearing Board, which consisted of two students and faculty member,

voted unanimously in favor of finding Plaintiff guilty of all four charges. The Board issued a

4

Decision Summary that included a "rationale for sanction":

> Due to Mr. Richards prior record including 7A and 5B violations of the Student Code
> of Conduct the Board has chosen to suspend Mr. Richards until 12-16-12 and require
> a 2,000 word reflection paper to be due prior to re-enrollment and attend/complete
> behavioral assessment.  Due to the prolific record and the current violations the
> Board recommends that if Mr. Richards comes back to the University and is found
> in violation again expulsion should be the next recommended sanction.

(Def. Ex. 8 at 59.)

A formal letter informing Plaintiff of the results of the Hearing and his appeal rights was

sent the following day, April 24, 2012.  The letter included the following warning to Plaintiff:

> In accordance with the sanction of suspension, you are prohibited from being present
> on the main and any regional campus of Ohio University for the duration of your
> suspension.  Should you be found on campus, without permission, before you have
> been granted permission to re-enroll, you will be subject to arrest for trespassing.

(Def. Ex. 8 at 60.)  Based on his suspension, Plaintiff was unable to finish his classes that

semester and lost any credit that he would have received from them.

On May 10, 2012, Plaintiff appealed the Hearing Board's decision and was permitted to

have additional statements provided on his behalf.  (Def. Ex. 8 at 78–97.)  The Appeal Board,

which consisted of a student, an administrator, and a faculty member, upheld the Hearing

Board's decision.  On May 18, 2012, Plaintiff was informed of the decision in a letter, that also

informed him of his appeal right to the Vice President of Student Affairs.  (Def. Ex. 8 at 110.)

On May 16, 2012, Plaintiff pled guilty in the Athens County Municipal Court to one

count each of assault and criminal damaging and two counts of disorderly conduct.  (Def. Ex. 9 at

1.)

Plaintiff petitioned Ohio University for Vice Presidential Review of his suspension for

the Code Of Conduct violations.  The Vice President of Student Affairs, Defendant Kent Smith,

5

Jr., Ph.D., affirmed the violations but reduced Plaintiff's suspension so that it lasted only until the end of Summer Semester 2012. In a May 30, 2012, letter informing Plaintiff of the results of the review, Dr. Smith reiterated the warning to Plaintiff that he would be arrested for trespassing if he was found on campus during his suspension. (Def. Ex. 8 at 118–19.)

On June 1, 2012, Christopher Harris, J.D., Director of University Judiciaries, circulated an interoffice communication to the Campus Safety department, the Registrar, the Financial Aid/Scholarship department, the Bursar's Office, and the Dean of the College of Business that provides in its entirety:

> Please be advised that the above student has been suspended for disciplinary reasons effective Spring Quarter 2012 & Summer Quarter 2012, ending August 11, 2012. Should Mr. Richards be found on campus during this time without permission from the Office of the Community Standards & Student Responsibility he is subject to arrest for trespassing.
>
> Should you have any questions concerning this matter, please feel fre to contact me.

(Def. Ex. 8 at 135.)

Notwithstanding Plaintiff's suspension and his forced withdrawal from his Spring 2012 classes for which he received no credit, his family received invitations to Ohio University's Spring 2012 graduation. Plaintiff's family came from New York the weekend of the graduation. On June 8, 2012, Plaintiff participated in the graduation ceremony practice held on the Ohio University campus. On June 9, 2012, Plaintiff participated in the graduation ceremony with his class. After he left the ceremony with his family, but was still on Ohio University campus, Ms. White saw him. Ms. White then informed Mr. Harris that Plaintiff was present on campus. Mr. Harris called the police who came and arrested Plaintiff for trespassing. (Def. Ex. 8 at 137.) This arrest occurred in front of Plaintiff's family.

6

Plaintiff was taken to the Athens County Municipal Court, where he pled no contest to a charge of criminal trespass. (Def. Ex. 10.) Plaintiff appeared before Judge William Grim, who found him guilty of criminal trespassing.

On June 12, 2012, Ohio University filed disciplinary charges against Plaintiff based on his arrest for trespassing and the violation of his disciplinary probation. (Def. Ex. 8 at 139.) On July 19, 2012, Mr. Harris sent Plaintiff a letter informing him of the charges. Thereafter, the initial interview about the June incident was conducted with Plaintiff over the telephone.

On August 2, 2012, Plaintiff petitioned to re-enroll at Ohio University. Mr. Harris denied that petition on August 11, 2012.

On August 27, 2012, a disciplinary hearing on the June trespassing incident was scheduled for August 31, 2012. Plaintiff was sent this scheduling notice via letter and email. (Def. Ex. 8 at 143–44.) Plaintiff retained private counsel, who requested an extension of the hearing. Ohio University denied that request.

On August 30, 3012, the disciplinary hearing was conducted before the University Hearing Board, which consisted of a faculty member and two students. Plaintiff did not appear at the hearing. The Board unanimously voted to find Plaintiff guilty of trespassing and violating disciplinary probation. The Board issued its decision and its rationale, and recommended that Plaintiff be expelled from Ohio University. (Def. Ex. 8 at 147.)

On September 12, 2012, Interim Associate Vice President for Student Affairs and Dean of Students Jennifer Hall-Jones, Ph.D., informed Plaintiff by letter of the results of the disciplinary hearing. (Def. Ex. 8 at 150.) Dr. Hall-Jones informed Plaintiff of the recommended expulsion, but explained that she reduced the sanction to a disciplinary suspension effective until

7

the end of Spring Semester 2013.  The letter also informed Plaintiff of his appeal rights.

On September 14, 2012, Plaintiff filed this action, alleging violations of his federal constitutional due process rights and his statutory rights under the Ohio Revised Code.  Along with his Complaint, Plaintiff filed a motion for a Temporary Restraining Order and/or a Preliminary Injunction.  Pursuant to the agreement of the parties at the telephone conferences held on September 14, 2012 and September 18, 2012, the injunctive relief motion was addressed in briefing on an expedited basis and an oral hearing was scheduled for September 20, 2012. That hearing took place, but before a decision was rendered, the parties engaged in settlement negotiations with a Magistrate Judge of this Court.

During these settlement negotiations, on October 23, 2012, Plaintiff petitioned Ohio University for a Vice Presidential Review of his suspension.  On November 9, 2012, Plaintiff was sent via overnight mail the results of that review, which included a reduction in his suspension so that it would only last through the conclusion of the 2012 Fall Semester.  (ECF No. 21.)  The review also resulted in a grant of Plaintiff's request for re-enrollment to the University for the 2013 Spring Semester.

On November 13, 2012, the Magistrate Judge conferred with counsel and issued a scheduling order permitting Plaintiff to supplement his injunctive relief motion, and for Defendants to file a motion for summary judgment, which is the subject of this Opinion and Order.

In January 2013, Plaintiff re-enrolled at Ohio University.  On May 4, 2013, Plaintiff graduated from Ohio University.  (ECF No. 31-1.)

8

## II.

Defendants move for summary judgment on Plaintiff's federal law claims and move for dismissal of his state law claim, his federal injunctive relief claim, and his claims based on federal law against Defendant Roderick J. McDavis. Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's federal claims, it need not additionally address Defendants' arguments related to dismissal of portions of those claims. As requested, the Court will address Plaintiff's state law claim and injunctive relief claim under the standard applicable to motions to dismiss.

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, 477 U.S.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

9

**B. Motion to Dismiss**

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in it as true, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–5570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted).

### III.

Plaintiff alleges that Defendants violated his constitutional due process rights in the following ways: Plaintiff was denied counsel during the disciplinary proceedings; the hearings were untimely pursuant to Ohio Revised Code § 3345.22, which is a source of rights protected by federal constitutional due process; Defendants failed to provide the reasons for the disciplinary verdict and evidence they relied upon; Mr. Harris was part of the disciplinary process and he is biased against Plaintiff; and, considering that Plaintiff was about to graduate, the suspension was arbitrary and capricious. Plaintiff also argues that Ohio University's Rule related to the ability to utilize an attorney in disciplinary proceedings is constitutionally vague and overbroad.

**A. Procedural Due Process**

Plaintiff is entitled to due process in the disciplinary proceedings held at Ohio University. In *Flaim v. Medical College of Ohio*, the United States Court of Appeals for the Sixth Circuit

explained:

> In this Circuit we have held that the Due Process Clause is implicated by higher education disciplinary decisions. *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986) (finding due process clause implicated in suspension from university for cheating); *see also Goss v. Lopez*, 419 U.S. 565, 575 (1975) (liberty and property interest implicated in high-school suspension); *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) (a student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property"). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See also Gorman*, 837 F.2d at 12 (stating that due process is "not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation"). Because Flaim's case is a disciplinary expulsion, rather than an academic one, we conduct a more searching inquiry. *See Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (academic decisions "call[] for far less stringent procedural requirements").
>
> Many times over the Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. *See Goss*, 419 U.S. at 579 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process is the opportunity to be heard.")); *Goldberg v. Kelly*, 397 U.S. 254 (1970). The type of notice and hearing will vary and be judged for sufficiency based on the context in which the dispute arose.

418 F.3d 629, 633–34 (6th Cir. 2005) (parallel citations omitted).

In reviewing Plaintiff's due process claims, this Court must determine the amount of process that was due and whether it was provided. To make this determination, the Court considers the three factors set forth in *Mathews v. Eldridge*: "(1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *Id.* at 635 (citing *Ingraham v. Wright*, 430 U.S. 651, 676–82 (1977), which was applying *Mathews*). "Through these vague guideposts and their

11

application to specific procedural regimes, a general outline of what's required and what's not

comes into focus." *Id.*

In its analysis of due process in the college disciplinary context, the *Flaim* court next set

forth the law necessary to evaluate the plaintiff's claims in that case, which are very similar to

those presented by Plaintiff in the instant action. That is, the *Flaim* plaintiff argued "that the

process he was afforded was less than was required by his circumstances" in that it contained the

following errors: "(A) inadequacy of notice; (B) denial of a right to counsel; (C) denial of a right

to cross-examine adverse witnesses; (D) denial of a right to receive written findings of facts and

recommendation; and (E) denial of a right to appeal the school's decision to expel him." *Id.* at

634.

The *Flaim* court continued its analysis by setting forth the law necessary to address the

plaintiff's specific allegations. As to the opportunity to be heard, the Sixth Circuit explained:

> The hearing whether formal, informal, live or not, must be meaningful and must
> provide the accused with the opportunity to "respond, explain, and defend."
> *Gorman*, 837 F.2d at 13. If the hearing is live, the accused has a right to be present
> for all significant portions of the hearing. Courts have generally been unanimous,
> however, in concluding that hearings need not be open to the public, *see e.g., Hart
> v. Ferris State Coll.*, 557 F. Supp. 1379, 1389 (W.D. Mich. 1983) (no right to open
> hearing), that neither rules of evidence nor rules of civil or criminal procedure need
> be applied, *see e.g., Nash*, 812 F.2d at 665 (no right to use of formal rules of
> evidence); *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983)
> (same); *Morale v. Grigel*, 422 F. Supp. 988, 1000-01 (D. N.H. 1976) (exclusionary
> rule need not be applied), and witnesses need not be placed under oath, *see e.g.,
> Knapp v. Jr. Coll. Dist.*, 879 S.W.2d 588, 592 (Mo. Ct. App. 1994).

*Id.* at 635–36.

Relating to the right to have a written reasons for a particular administrative decision, the

*Flaim* court provided:

12

> An accused individual is generally not entitled to a statement of reasons for a decision against them, at least where the reasons for the decision are obvious. *Hall v. Med. Coll. of Ohio*, 742 F.2d 299, 310 (6th Cir. 1984); *Jaksa*, 597 F. Supp. at 1253-54.

*Id.* at 636.

With regard to a student's right to counsel, the main focus of Plaintiff's complaint in this action, the *Flaim* court directed:

> Ordinarily, colleges and universities need not allow active representation by legal counsel or some other sort of campus advocate. *Jaksa*, 597 F. Supp. at 1252. *But see Gomes v. Univ. of Maine System*, 365 F. Supp. 2d 6, 16 (D. Me. 2005) (citing *Keene v. Rodgers*, 316 F. Supp. 217, 221 (D. Me. 1970) ("the student must be permitted the assistance of a lawyer, at least in major disciplinary proceedings"). In *Jaksa*, the court noted, however, that counsel may be required by the Due Process Clause to ensure fundamental fairness when the school proceeds through counsel or the procedures are overly complex. *Jaksa*, 597 F. Supp. at 1252. Other courts have concluded that the "weight of authority is against representation by counsel at disciplinary hearings, unless the student is also facing criminal charges stemming from the incident in question." *Gorman*, 837 F.2d at 16; *see also Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978) (right to counsel when criminal charges pending based on same incident).

*Id.* at 636.

Applying the law just set out to the facts in this case, the Court first addresses *Mathews*, which as noted above instructs the Court to consider the private interest, the benefit of additional procedures, and the burden on the government. In the analysis below, the Court "need not continually reiterate the strength of [Plaintiff]'s private interest as it remains constant throughout [the] analysis." *Id.* at 638. Although Plaintiff's private interest here is not as significant as that of an expelled student, whose interest "extends beyond his immediate standing at [the university] and could 'interfere with later opportunities for higher education and employment[,]'" it is certainly still significant. *Id.* (citing *Goss*, 419 U.S. at 575). This Court's "review of this matter,

13

however, is circumscribed." *Id.* It is "limited to determining whether the procedures used by [Ohio University] were constitutional." *Id.* Thus, below the Court considers "the additional procedures requested, any error-reducing benefit those procedures might have, and the burden on [Ohio University] of adding those additional procedures." *Id.*

### 1. Right to Counsel

Plaintiff contends that Ohio University has promulgated rules and/or guidelines that provide students the right to counsel when they have pending, or there is likely to be filed, criminal charges against them. Plaintiff testified that when he had criminal charges pending against him from the February incident, he specifically requested counsel from Ms. White and his request was denied. Plaintiff further argues that Ohio University's denial of his request for a continuance of the disciplinary hearing regarding the June incident deprived him of his right to counsel because his newly retained attorney could not be prepared to attend the scheduled hearing. Plaintiff relies on Ohio University's guideline titled "Hearing Board Guidelines for Attorneys (or Law Trained Advisors to accused students in cases where there are likely to be pending crimnal charges)." (ECF No. 3-3) (*see also* ECF No. 3-4, Student Rights and Options and Heaing Guide for the Accused) (both referring to this Guideline "in cases where criminal charges are pending or likely to be pending").

It is not disputed that Plaintiff had criminal charges pending related to the February incident when his disciplinary hearings were held, and that he had pled guilty to the trespassing charge when the disciplinary hearings were held related to the June incident. The testimony related to whether Plaintiff requested counsel is contradicting, with Plaintiff maintaining that he asked if he could have counsel present and Ms. White denying that he so requested. Accepting

as true Plaintiff's testimony, as this Court must when deciding Defendants' Motion for Summary

Judgment, the Court still finds that Plaintiff has failed to raise any genuine issue as to whether

this denial of counsel violated his due process rights.

This situation is similar to the one before the Sixth Circuit in *Flaim*. There, the college

too had a guideline that permitted a student facing outstanding criminal charges the right to have

counsel present at the disciplinary hearing.[1] The court concluded that, "assuming there is a right

to counsel in some academic disciplinary proceedings,[2] we think that the procedures utilized here

were sufficient." *Id.* at 640.

> Assuming Flaim was led to believe that he would be permitted to have active counsel
> at the hearing, it does not necessarily follow that what occurred violated his
> constitutional rights. As this Court has stated,
>
> > It is not every disregard of its regulations [or assurances] by a public
> > agency that gives rise to a cause of action for violation of
> > constitutional rights. Rather, it is only when the agency's disregard
> > of its rules [or assurances] results in a procedure which itself
> > impinges upon due process rights that a federal court should intervene
> > in the decisional processes of state institutions.
>
> *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976).
>
> In *Jaksa*, the court noted that a right to counsel may exist if "an attorney presented
> the University's case, or [] the hearing [was] subject to complex rules of evidence or
> procedure." *Jaksa*, 597 F. Supp. at 1252. Here, Medical College of Ohio did not

---

[1]In *Flaim*, the student's criminal charges were completed before the disciplinary process started, which made the rule in that case arguably no longer applicable since it was directed to students facing criminal charges. However, for purpose of this Court's analysis herein, this distinction is irrelevant.

[2]The *Flaim* court inserted a footnote here indicating that it "need not consider here all the circumstances under which an accused may have a right to counsel. *See Jaksa*, 597 F. Supp. at 1252 n. 8 (discussing diversity of decisions on the right to counsel)." *Flaim*, 418 F.3d at 640, n.4. This Court too need not consider all the circumstances under which a student may have a right to counsel.

present its case through an attorney. The hearing was not procedurally complex. There were no rules of evidence. Flaim was provided with an opportunity to appear in person before the committee to present his defense. Flaim was permitted to listen to adverse witnesses and to rebut that testimony while addressing the committee with his version of events. Flaim's complaint really boils down to the assertion that he was denied the opportunity to present his case as effectively as he would have wished -- he could not reasonably claim that he was denied the opportunity to present his case at all due to the lack of legal counsel. Flaim's attorney may have been more articulate, but there is no indication that the hearing was so complex that only a trained attorney could have effectively presented his case. *See Jaksa*, 597 F. Supp. at 1252.

*Id.* (alterations in original).

Likewise, in the case at bar, assuming without deciding that Plaintiff did have the right to counsel in his disciplinary proceedings, the procedures utilized were sufficient. The University did not have its case presented by an attorney, the hearings were not procedurally complex, and the formal rules of evidence were not utilized. Further, Plaintiff was permitted to personally appear and present his defense. He certainly was afforded the "opportunity to 'respond, explain, and defend.'" *Id.* at 635. As in the *Flaim* Plaintiff's complaint, Plaintiff's really boils down to his assertion that he was denied the opportunity to present his case as effectively as he would have wished -- he cannot reasonably claim that he was denied the opportunity to present his case at all due to the lack of legal counsel.

As to the June incident only, there is even less opportunity for Plaintiff to be prejudiced by a denial of counsel because Plaintiff had already pled guilty to the trespassing charges in state court, the fact of which was dispositive of that charge by Ohio University. That is, it is constitutionally adequate for the factual predicate of an administrative hearing to be established by an earlier proceeding that met due process. *See Kratt v. Garvey*, 342 F.3d 475, 484 (6th Cir. 2003) ("Due process, however, does not require . . . an opportunity to probe the merits of [a]

16

criminal conviction. Rather, the [person subjected to administrative action] must address the merits of his conviction during the criminal proceedings[.]"). The University charged Plaintiff with violating the Code's prohibition of trespassing, which is defined as "unauthorized entry into any university . . . facility." (TRO Hearing Def. Ex. 1 at 2.) He was also charged in the criminal complaint that he, "without privilege to do so, recklessly enter[ed] to remain on the land or premises of another as to which notice of unauthorized access or presence is given by actual communication to the offender," by being "present on campus property at the Convocation Center after being served with written notice of suspension and ban from campus through August 2012." (Def. Ex. 8 at 138.) Plaintiff pled no contest to the trespassing charge in state court and that court found him guilty of that charge, which conclusively established the facts underlying the criminal complaint. Ohio Crim. R. 11(B)(1) ("plea of no contest . . . is an admission of the facts alleged in the . . . complaint").

Plaintiff's arguments that he only pled no contest to the trespassing charge because it was too difficult to fight the charge from New York does nothing to alter this analysis. The state court was obligated to assure itself that it had enough information to support all of the elements of the offense before it entered its guilty verdict. *State v. Jaser*, No. 2005 CA 98, 2006 Ohio App. LEXIS 3088, 2006-Ohio-3197, ¶ 33 (Ohio Ct. App. June 23, 2006) ("when a trial court sees that the operative facts recited by the prosecution do not show all of the essential elements of the offense with which the defendant is charged, it should refuse to accept defendant's plea of no contest as it is permitted to do by Crim. R. 11(E). . . . The trial court commits reversible error, however, when it proceeds to make an adjudication of guilt after it accepts a defendant's no contest plea to charges that are not supported by the operative facts.")

17

Finally, the right to counsel provided by Ohio University is explicitly granted to protect a

student's rights in a pending criminal trial, as is evidenced by the Guideline's provision to the

attorney:

> Your presence at a Student Code of Conduct Hearing is only to protect your client's rights in anticipation of pending criminal trial, see Gabrilowitz v. Newman, 582 F.2d 100, at 106. It is not for the purpose of gathering information for use before or during a criminal trial.

(ECF No. 3-3 at 1) (citing to *Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978)). The case to

which the Guideline cites is an example of the type of situation where counsel should be

permitted because of potential for the student to be deprived of his Fifth Amendment right

against self incrimination:

> The private interest and risk of erroneous deprivation that will be affected by the refusal of the hearing board to allow [the student] the assistance of counsel depend upon the choice made at the hearing. If [the student] chooses not to risk self-incrimination, he risks loss of his college degree. If he chooses to protect his degree, he risks self-incrimination and possible imprisonment of up to twenty years. All that [the student] asks is that he be allowed the advice of counsel when he throws his college degree into the balance against a possible loss of liberty.

*Gabrilowitz*, 582 F.2d at 105. The facts before the *Gabrilowitz* court illuminate why courts find

that in some situations where criminal charges are pending, it is necessary for a university to

provide the student the assistance of counsel in the disciplinary hearings. Plaintiff here, however,

makes no claim, nor do the facts support any claim, that Plaintiff was at risk of either losing his

college degree or losing his liberty.

Finally, the Court notes that, under *Mathews*, Plaintiff fares no better. *See Flaim*, 418

F.3d at 640 (noting at the close of its analysis of the plaintiff's right to counsel claim, that

"[u]nder *Mathews*, Flaim does no better."). "While the additional safeguard of professional

advocacy may lessen the risk of erroneous expulsion by improving the quality of the student's case, the administrative burdens to a university, in the business of education, not judicial administration, are weighty." *Id.* "Full-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause and conducting these types of hearings with professional counsel would entail significant expense and additional procedural complexity. *Id.* at 640–41; *see also id.* at 635, n.1 ("'A university is not a court of law, and it is neither practical nor desirable it be one.'") (quoting *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D. Me. 2005)). "[T]he presence of an attorney, however articulate, would not likely have obscured from the" University's disciplinary committees that fact of Plaintiff's criminal proceedings and convictions. The Court concludes that *Mathews* counsels against this additional procedural safeguard on these unique facts.

### 2. Written Reasons for Action

Plaintiff asserts that he was denied due process because he was not provided a written statement of reasons as to why he was suspended based on the June incident, which were issued but apparently not sent to Plaintiff. However, even if there were no statement of reasons issued, it would not have violated Plaintiff's due process rights. A claimant is simply not entitled to a statement of reasons for the decision when the reasons are obvious, as they were here. *See Hall v. Med. Coll. of Ohio*, 742 F.2d at 310. Plaintiff was provided notice that the disciplinary proceedings were being held based on his arrest and conviction of criminal trespassing. Thus, it cannot be reasonably inferred that the reasons for the suspension related to the trespassing charges were not obvious. Therefore, Plaintiff has failed to raise any genuine issue of material fact as to whether Defendants' failure to provide a written statement of reasons to him violated

Plaintiff's constitutional due process rights.

### 3. Biased Participant

Plaintiff maintains that his due process rights were violated because Mr. Harris was

biased against Plaintiff as is evidenced by Mr. Harris' circulation of the June 1, 2012 letter

informing other Ohio University officials of Plaintiffs' suspension, calling the police on Plaintiff

when he observed him at graduation, and initiating disciplinary proceedings against Plaintiff for

being present on campus in violation of his suspension.

Defendants argue that Mr. Harris has not exhibited bias, but instead acted appropriately in

response to Plaintiff's actions. However, Defendants contend that even if Mr. Harris did exhibit

bias, due process is not violated by the fact that one participant in an administrative proceeding

had prior involvement in or had taken a position regarding the underlying matters. This Court

agrees.

As Defendants correctly argue, "'mere exposure to evidence presented in nonadversary

investigative procedures is insufficient in itself to impugn the fairness of the Board members[.]'"

(Defs.' Mot. for Summ. J. at 27) (quoting *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (due

process not violated when the same members of the state board that conducted an investigation

into allegations of professional misconduct would have also presided at his suspension hearing.).

Indeed, it is "very typical for the members of administrative agencies to receive the results of

investigations, to approve the filing of charges or formal complaints instituting enforcement

proceedings, and then to participate in the ensuing hearings. This mode of procedure . . . does not

violate due process of law." *Id.* at 56.

In the case *sub judice*, it is undisputed that Mr. Harris did not make the ultimate, or even

20

in the interim, determinations of Plaintiff's guilt or what sanctions should be imposed. Mr.

Harris testified that he was not present at the August 30, 2012 proceedings before the Hearing

Board and the records of the decision in the final appeal reveal that Mr. Harris did not make the

ultimate decision. (Harris Testimony, Tr. at 94.)

Consequently, the Court finds that Plaintiff has failed to raise any jury issue related to

whether Mr. Harris' alleged bias prevented Plaintiff from receiving the process he was due in his

disciplinary hearings.

### 4. Delay

Plaintiff contends that Ohio Revised Code § 3345.22 provides a source of rights protected

by federal constitutional due process. The statute provides certain time limits for disciplinary

hearings that involve immediate suspension. While excessive delays implicate due process, Ohio

University's disciplinary process provided to Plaintiff did not involve any delays of that nature.

*See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 564 (6th Cir. 1983), *aff'd, Cleveland*

*Bd. Of Education v. Loudermill*, 470 U.S. 532 (1985) ("We hold only that the delay must be

"excessive" or "unreasonable" before federal due process is denied."). Consequently, Plaintiff

has failed to raise any genuine issue of material fact ast o whether any perceived delays in the

disciplinary proceedings violated due process.

### B.    Substantive Due Process

Plaintiff next argues that even if the Court were to find that he failed to raise a gunuine

issue of material fact as to whether Defendants violated his constitutional right to procedural due

process, their actions violated his right to substantive due process. Plaintiff asserts that

Defendants' denial of his right to counsel and its decision to suspend him one week before

21

graduation was arbitrary and capricious, and therefore, a denial of constitutional substantive due process. This Court disagrees.

The Sixth Circuit has indicated that substantive due process can be violated by a university in student disciplinary proceedings. *See Flaim*, 418 F.3d at 643 ("Flaim also alleges that Medical College of Ohio violated his substantive due process rights in that the college's actions in expelling him"). For substantive due process to be implicated Ohio University's actions must "shock the conscience." *See id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). The *Flaim* court gave an example of a situation in which the "expulsion shocks the conscience." *Id.* That is, "in *Dixon* [*v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961)], a case argued by Jack Greenberg and Thurgood Marshall, [the plaintiffs] were African-American students and were expelled for seeking to purchase lunch at a publicly owned grill in the basement of the Montgomery, Alabama, county courthouse." *Id.*

The actions of Ohio University in the instant action fall far short of meeting this standard. Indeed, they are supported by substantial evidence. *See id.* ("Flaim's expulsion does not [shock the conscience] and it was supported by substantial evidence."). Therefore, Plaintiff has failed raise any genuine issue of material fact as to whether his substantive due process rights were violated by Defendants.

## C. Vagueness and Overbreadth

With regard to his vagueness and overbreadth challenge, Plaintiff alleges

Defendants' promulgation of vague and overbroad rules constitute a violation of the First and Fourteenth Amendments to the United States Constitution in that their rules concerning whom a student may consult for disciplinary proceedings excludes attorneys, whom even if no right to attorney representation exists, the right of consultation and to seek advice from [an attorney] violates the above state

22

constitutional provisions.

(Am. Compl. ¶ 27; ECF No. 14 at 11.)

Plaintiff appears to allege that it is a constitutional violation for a university to promulgate disciplinary rules that do not specifically inform a student that he or she has a constitutional right to consult and seek advice from an attorney, even if in the particular proceedings there is no right for an attorney to be present with the student. (Pl.'s Counsel Argument, Tr. 232.) Under Plaintiff's logic, however, any rule promulgated by a university that did not specifically inform students of each of their constitutional rights would be subject to a constitutional challenge.

Instead, challenges for unconstitutional vagueness and overbreadth are properly raised in cases where the challenged rule's "prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion" (vagueness challenge); or when the rule or "policies reach a 'substantial' amount of protected free speech, 'judged in relation to the [policies'] plainly legitimate sweep.'" *Yoder v. Univ. of Louisville*, 2013 FED App. 0488N, 2013 U.S. App. LEXIS 9863, at *25–26, 28–29 (6th Cir. May 13, 2013).   Nowhere in the record of this case does Plaintiff make any allegation or argument that would permit the Court to engage in a vagueness or overbreadth analysis.  The nature of Plaintiff's allegations simply do not permit it.

Accordingly, the Court finds that Plaintiff has failed to make a showing sufficient to establish the existence of any element that is essential to his vagueness and overbreadth claim.

## D.  Conclusion - Federal Constitutional Violations

Based on the foregoing, the Court finds that, even when viewing the evidence in the light

most favorable to Plaintiff and drawing all justifiable inferences in his favor, he has failed to raise any genuine issue of material fact regarding any of the federal constitutional violations he alleges. Defendants, therefore, are entitled to judgment as a matter of law on these claims.

The Court notes, however, that as the Sixth Circuit counseled in *Flaim*, "[t]he Due Process Clause [] sets only the floor or lowest level of procedures acceptable." *Id* at 636. And, here, similar to *Flaim*, the procedures used "certainly could have been better[.]" *Id.* at 637. It is quite apparent that those involved in preparing the graduation of the Ohio University students were not in contact with those handling Plaintiff's disciplinary charges. It is an unfortunate situation where a student has his family invited to graduation and then is arrested in front of them. Plaintiff, however, obviously engaged in his own detrimental wishful thinking regarding graduation – he was aware that he was under suspension and had not been permitted to take his final exams, making graduation an impossibility, and he admits he was warned that if he were on campus he could be arrested for trespassing. Regardless of whether the procedures utilized were ideal, they were in the end, fundamentally fair. *See id.* (the procedures used, while "far from ideal, . . . were in the end, however, fundamentally fair, and we accordingly affirm the district court's judgment").

## IV.

Defendants move for dismissal of Plaintiff's state law claim and his injunctive relief claim for failure to state a claim upon which relief can be granted.

### A. Ohio Revised Code

Ohio Revised Code § 3345.22 provides that an institution of higher learning must provide a hearing within five days of a student's arrest on certain offenses "to determine whether the

person shall be immediately suspended from the college or university." Ohio Rev. Code §
3345.22(A). Plaintiff argues that because Ohio University did not provide him with his first
disciplinary hearing within five days of the date of either of his arrests, it violated this statute.

Defendants maintain that Plaintiff's reliance on this statute is misplaced because it does
not apply here. This Court agrees. By its terms the statute applies when a student is in danger of
being "immediately suspended" in connection with his arrest for certain offenses. Defendants
made no effort to "immediately" suspend Plaintiff as is reflected by the fact that he was arrested
in February and his suspension did not go into effect until June. And, Plaintiff was already
suspended when he was arrested in June.

Subsection (B) of the statute supports this interpretation, *i.e.*, that § 3345.22 only applies
to cases involving the extraordinary action of immediate suspension, providing "R.C. 3344.22
shall not be construed to limit any duty or authority . . . to take appropriate disciplinary action,
through such procedures as may be provided by rule, regulation, or custom of such college or
university, against students[.]" As one Ohio court has observed, this statute "does not limit [a
university's] ability to take disciplinary action according to its standard practices." *Franklin v.
Miami Univ.*, No. 2005-11761, 2008 Ohio Misc. LEXIS 52, 2008-Ohio- 2446, ¶ 31 (Ohio Ct. of
Claims May 7, 2008) ("Given that plaintiff does not allege that defendant failed to follow its
standard disciplinary procedure in terminating him, the court finds that R.C. 3345.22 did not
prohibit plaintiff's termination."). Similarly here, Plaintiff makes no claim that Ohio University
failed to follow its standard disciplinary proceedings or that he was subjected to immediate
suspension. Therefore, § 3345.22 does not prohibit the discipline imposed upon Plaintiff by
Ohio University.

Accordingly, Plaintiff has failed to state any plausible claim for relief under Ohio Revised Code § 3345.22 and Defendants are entitled to dismissal of that claim.

## B. Injunctive Relief

Plaintiff contends that, although he has obtained some of the relief sought in his request for a temporary restraining order or preliminary injunction, the request is not moot. Specifically, Plaintiff posits that the suspension still remains on his record, he still "requests monetary damages and declaratory relief as well as attorney fees," and Ohio University's rules are overbroad and vague permitting its actions to be "capable of repetition yet evading review" because Plaintiff "could enroll in graduate school at Ohio University." (Pl.'s Reply to Def. Supp. Mem. for Injunctive Relief; ECF No. 32 at 1–3.)

Because the Court finds that Plaintiff has failed to raise any genuine issue of material fact as to whether Ohio University violated his constitutional due process rights or promulgated rules that are constitutionally vague or overbroad, Plaintiff's injunctive relief claim necessarily fails.

## V.

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Dismissal and Summary Judgment. (ECF No. 20.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

9 - 19 - 2013
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

26